# KELLY *v.* REED.

---

PATENTS; INTERFERENCE; PRELIMINARY STATEMENT; DILIGENCE; CONCEPTION.

1. Where the issue presented in an interference is one of originality, and not one of independent invention, the question of diligence is not involved.

2. An attempt by one of the parties to an interference to establish a date of conception earlier than the date named in his preliminary statement will be disregarded, in the absence of an amendment of the preliminary statement, even though it is corroborated.

3. In an interference involving priority of conception of the invention of a machine for punching master records or music patterns for piano players, upon a review of the evidence, the decision of the Commission of Patents awarding priority to the junior party was affirmed, on the ground that the senior party was practically without corroboration, while the junior party was corroborated by disinterested witnesses and the circumstances disclosed by the evidence. (Mr. Chief Justice SMYTH dissenting.)

No. 1169, Patent Appeals. Submitted November 18, 1918. Decided January 6, 1919.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Wm. Quimby, Mr. W. L. Edmonston,* and *Mr. H. W. Bowen* for the appellant.

*Mr. A. V. Cushman* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This appeal is from the decision of the Commissioner of Patents in an interference proceeding. The invention relates to a machine for punching master records or music patterns for piano players.

The issue is in ten counts, of which the following two are illustrative:

"1. In a perforating machine, the combination of a carriage transversely movable to the line of motion of the roll to be perforated, punches to effect the perforation, devices to automatically set the carriage in motion and to stop the same when the carriage has reached a predetermined position relative to the width of the roll to be punched."

"7. In a music roll perforating machine, a movable table member, operating means for said member, a main terminal, branch terminals, a contact device having a portion to establish an electrical connection from the main terminal and either one of the branch terminals, an operating device for the table, a device to operate the operating device, and electrical connections therefrom to the branch terminals to cause the table member to follow up the initial position of the current establishing its zero or open circuit contact device to position, a source of electrical energy, and connections therefrom to the main terminal and the branch terminals."

Appellant, John F. Kelly, is the senior party, and alleges that he conceived the invention in the spring of 1908 and that

he made drawings and disclosed the invention on or about May 6, 1908. Appellee, Walter C. Reed, alleges conception and disclosure by drawings in December, 1906, or January, 1907. Both parties rely for reduction to practice upon the building of a machine in December, 1909, in the factory of the Telelectric Company, of Pittsfield, Massachusetts. At that time Kelly was president of the company, and Reed was acting as its superintendent.

The issue here presented is one of originality. Hence, the question of diligence does not arise, as might well be the case were the parties independent inventors. It is unnecessary to enter into a discussion of the mechanism involved, since the issue is wholly one of fact, and the one who is able to establish the first independent conception is entitled to an award of priority.

The machine was constructed under the direction and supervision of Reed. The working drawings were prepared by one Stewart, a workman in the drafting division. Stewart testifies that when it was decided to go ahead with the construction of the electrical machine, Reed handed him a sketch similar to Kelly's exhibit No. 1, and told him the idea was Kelly's. The original sketch was not produced, exhibit No. 1 being an alleged reproduction made by Kelly for use at the trial. All that Stewart pretends to know about the sketch is what he testifies Reed told him. He had no information from Kelly. Stewart's testimony is not corroborated. On the other hand, Reed denies that he made such a statement to Stewart, and also that he delivered the sketch to him.

It is unnecessary to consider the case of Reed as to his alleged early conception, drawings, and disclosure; since his case revolves more strongly around the construction of a model early in 1907. This model was lost or destroyed, but, like Kelly's sketch exhibit No. 1, was reproduced by Reed for use at the trial. That the device, exhibit No. 13, was a reproduction of Reed's original model is supported by the testimony of Reed and three disinterested witnesses. Reed described the original model in detail. His witness May testified that Reed showed

him the original model and explained its operation. Booth, a carpenter, testified that he made the trough which was a part of the original model, and identified the trough in evidence as a reproduction of what he had originally made. And the witness Walters testified that the reproduced model was similar to one he saw in the Pittsfield factory. This, we think, sufficiently establishes conception of the invention by Reed at a date earlier than any date named in the preliminary statement of Kelly. Kelly, however, attempted in his testimony to establish a date of conception earlier than the date named in his preliminary statement. In the absence of an amendment of the preliminary statement, this testimony will be disregarded, even though it were corroborated, which it is not.

Reed introduced in evidence a book known as "record book No. 2, exhibit No. 10." On page 43 is a sketch and short specification note disclosing substantially the inventive idea embodied in the Reed model. This entry was signed by Reed and dated May 6, 1908. It is not denied that Reed made the sketch. It will be noted that Kelly in his preliminary statement alleged "that on or about May 6, 1908, he first caused drawings of the invention to be made; that on or about May 6, 1908, he first explained the invention to others." When questioned as to what he relied upon in fixing this date, he testified: "I was influenced somewhat by a photograph of page 43 of record book 2 (Reed's exhibit No. 10). On examining this, I found it contained so much of my disclosure to Mr. Reed that I was satisfied that my sketch must have been handed to him before the date of entry."

He testified that prior to leaving the employ of the Telelectric Company, he had procured photographs of "all the written matter that was then in the book;" that Reed never called his attention to the drawing, and that he had no recollection of seeing the drawing before leaving the employ of the company April 1, 1910. To overcome Reed's earlier conception and disclosure, Kelly testified that he made a sketch in 1907, which he showed to Reed, and from which, he infers, Reed could have made the sketch in the book. Reed denies that Kelly ever showed

him such a sketch. Referring to this part of Kelly's case, the Commissioner in his opinion said: "The testimony of Kelly is very much discredited by the fact that, while he testifies that he conceived the invention in the fall of 1907, and made a sketch at that time, there was no reference to such a sketch in his preliminary statement, in which he alleges that he 'caused drawings to be made on or about May 6, 1908.' He admits that the date, May 6, 1908, had reference to the sketch which appears in the book, Reed's exhibit No. 10, although he does not testify that this sketch was made by his directions, or that he knew anything about it until long after it was made."

It appears that Kelly prepared a lecture, in which he described the invention in issue, to be delivered before a scientific society in Boston. On account of sickness in his family, he was unable to attend, and requested Reed to go in his place and read the lecture before the society, which Reed did. It is sought to distort this into an admission by Reed that Kelly was the inventor. A copy of Kelly's letter introducing Reed and also a copy of the lecture appear in the record, and in neither is there any claim made or intimation by Kelly that he was the inventor, nor does it appear that up to that time Kelly had made any claim to invention. The lecture was delivered after the machine had been built, and it was merely descriptive of a new step in the art. There was nothing in this event to arouse any suspicion on the part of Reed that Kelly was claiming the invention.

On the whole case, Kelly is practically without corroboration, and to accord him priority we would be compelled to discard the unimpeached testimony of a number of disinterested witnesses, as well as the impelling circumstances which lend strength to Reed's case and which correspondingly weaken Kelly's position.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                   *Affirmed.*

Mr. Chief Justice SMYTH dissents.